UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JENNIFER M.,[1] | ) |
|       Plaintiff, | ) ) ) |
|       v. | )   No. 4:24-cv-00111-TWP-KMB ) |
| FRANK J. BISIGNANO,[2] | ) ) |
|       Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Jennifer M. applied for disability benefits and supplemental security income from the Social Security Administration ("SSA") on February 25, 2022, alleging an onset date of July 30, 2015. [Dkt. 9-2 at 17.] Her application was initially denied on July 11, 2022, as well as on reconsideration on October 11, 2022. [*Id.*] Administrative Law Judge Amy Budney (the "ALJ") conducted a hearing on September 21, 2023. [Dkt. 1 at 2.] The ALJ issued a decision on October 9, 2023, concluding that Jennifer M. was not disabled and therefore not entitled to receive the requested benefits. [Dkt. 9-2 at 14.] The Appeals Council denied her request for review on June 14, 2024. [*Id*. at 1.] On August 16, 2024, Jennifer M. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on May 7, 2025, replacing Acting Commissioner of the Social Security Administration Leland Dudek.

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion. For the reasons detailed herein, the Magistrate Judge **RECOMMENDS** that the District Judge **REVERSE** the Commissioner's decision denying Jennifer M. disability benefits and **REMAND** this matter for further proceedings.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the]

2

conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the

appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[3]

Jennifer M. was 51 years old when she applied for disability benefits. [Dkt. 9-2 at 53.] Jennifer M. has a high school education, [dkt. 9-2 at 53], and previously worked as a material handler including operation of a forklift, as a production line welder, and as a bartender. [*Id.* at 40.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Jennifer M. was not disabled. Specifically, the ALJ found as follows:

- At Step One, Jennifer M. had not engaged in substantial gainful activity since February 25, 2022, the application date. [*Id.* at 19.]

- At Step Two, Jennifer M. had the following severe impairments: osteoarthritis of the first carpometacarpal joint of the right and left hands; degenerative joint disease of the left ankle, foot, and knee; status-post left total hip replacement; degenerative disc disease of the lumbar spine; rheumatoid arthritis; and fibromyalgia. [*Id.*]

- At Step Three, Jennifer M. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 25.]

- After Step Three but before Step Four, Jennifer M. had the RFC "to perform light work as defined in 20 CFR 416.967(b) except frequent handl[ing] or finger[ing] with the right and left hand; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, and scaffolds; and should never be exposed to unprotected heights, dangerous moving mechanical parts, or operat[ing] [] commercial motor vehicles." [*Id.* at 27.]

- At Step Four, Jennifer M. was capable of performing past relevant work, specifically the job of bartender. [*Id.* at 40-41.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Jennifer M.'s age, education, and RFC, there were other jobs that existed in significant numbers in the national economy that Jennifer M. could perform including price marker, cashier, and counter attendant. [*Id.* at 41-42.]

### III. DISCUSSION

Jennifer M. raises four issues for the Court's review, alleging that (1) the ALJ critically misunderstood Plaintiff's severe impairments and their associated limitations due to an incomplete and inaccurate analysis of the claimant's medical record; (2) the ALJ improperly concluded that there was objective evidence to support the State Agency medical consultants' RFC determination when relying on that determination for her own decision; (3) in determining Jennifer M.'s RFC, "the ALJ failed to properly consider [Jennifer M.'s] pain, obesity, manipulative restrictions, and whether she would be on task and present at acceptable levels[;]" and (4) the ALJ improperly relied on reports of Jennifer M.'s activities without also noting the limitations she faced while trying to complete those tasks. [Dkt. 11 at 9.] The Court begins with the first issue because the Court finds it to be dispositive.

**A. Symptom Reporting in Jennifer M.'s Medical Record**

Jennifer M. argues that the ALJ erred by "myopically focus[ing] on normal findings, often overlooking critical findings that support the severity of Plaintiff's condition." [Dkt. 11 at 13.] Jennifer M. claims that the ALJ's exclusion or misinterpretation of evidence led the ALJ to conclude that Jennifer M. "had inconsistent symptomology," which is a key factor in determining Jennifer M.'s RFC. [Dkt. 11 at 10.] Jennifer M. points to several instances where the ALJ relies on either Jennifer M.'s denial of musculoskeletal issues in a physician's "Review of Systems" or a medical practitioner's reports of less intense musculoskeletal symptoms at medical appointments unrelated to Jennifer M.'s rheumatoid arthritis or fibromyalgia to support the ALJ's

5

conclusion that "the claimant's testimony and allegations are not entirely consistent with the record." [Dkt. 11 at 13, 15 (citing dkt. 9-2 at 29).]

In response, the Commissioner argues that the ALJ supported her decision "with substantial evidence." [Dkt. 15 at 1.] The Commissioner admits that "the ALJ did not cite every medical report or clinical finding in her discussion of the evidence," but notes that the ALJ "was not required to do so." [*Id*. at 11.] The Commissioner further argues that the Court must give the ALJ's evaluation of Jennifer M.'s symptoms and credibility analysis "special deference" and should not overturn the ALJ's decision because it is not "patently wrong," meaning it does not "lack[] *any* explanation or support." [Dkt. 15 at 7 (emphasis in original).] The Commissioner points to the ALJ's reliance on "prior administrative medical findings, objective medical evidence, clinical findings, treatment history, Plaintiff's reports to her treating sources, and activities of daily living" as support for the ALJ's RFC determination. [Dkt. 15 at 8.]

In reply, Jennifer M. argues that the ALJ made several legal errors independent of substantial evidence review by "failing to meaningfully address evidence contrary to the ALJ's conclusions and explain how it supported the RFC restrictions." [Dkt. 16 at 2 (emphasis removed).] Jennifer M. asserts that the ALJ is "legally required to consider all the evidence, 20 C.F.R. §416.945, and to build an accurate and logical bridge between the evidence" and the ALJ's conclusions throughout her decision. [*Id*. at 7 (emphasis removed).]

While an ALJ need not consider every piece of evidence in her decision, "[s]he must confront the evidence that does not support [her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (concluding that an ALJ may not consider only evidence that supports the ALJ's conclusion while disregarding evidence that undermines it). If the ALJ does not "develop

a full and fair record," the court cannot uphold the decision because the ALJ has failed to fulfill her basic obligation of building "an accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."); *see also Golembiewski v. Barnhart*, 322 F.3d 921 (7th Cir. 2003) ("Because the ALJ insufficiently explained why he discredited [claimant's] testimony, mischaracterized the medical evidence, and ignored evidence of [claimant's] disability, we remand to the agency for further proceedings.").

After reviewing the Parties' arguments and the administrative record, the Court concludes that the ALJ erred by repeatedly pointing to evidence from medical appointments unrelated to Jennifer M's rheumatoid arthritis or other musculoskeletal issues when concluding that Jennifer M. displayed inconsistent symptoms for those issues. Creating inconsistency by intermixing her accounting of Jennifer M.'s musculoskeletal symptoms with other evidence from wholly unrelated medical appointments constitutes reversible error. *See e.g.*, *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (finding the evidence used by the ALJ "singly and altogether unimpressive. The medical records were of purely physical ailments for which [the claimant] had sought help, and there is no reason to expect a doctor asked about an eye problem, or a back pain, or an infection of the urinary tract to diagnose depression."); *Robert M.W. v. Saul*, 2020 U.S. Dist. LEXIS 216895, at *5 (N.D. Ill. 2020) (the ALJ's focus on the lack of fatigue finding during select visits "[was] misplaced. It was not reasonable to expect that these hospital records related to his alcohol abuse would note the medication side effect of fatigue") (internal citations omitted); *Cooper v. Berryhill*, 2018 U.S. Dist. LEXIS 36853, at *21-25 (N.D. Ind. 2018) (reversing based on the ALJ's

"significantly incomplete summary of the medical records" which noted that the claimant did not report her symptoms in the "Review of Systems" for medical appointments unrelated to her severe migraines but failed to note multiple relevant appointments and hospitalizations); *Groeteka v. Berryhill*, 2018 U.S. Dist. LEXIS 30524, at *10 (S.D. Ill. 2018) (holding that "[i]t would not be expected that plaintiff would complain . . . about his back pain" to a doctor treating the claimant for esophagitis, and the ALJ's reliance on that denial while ignoring other relevant medical appointments constituted impermissible "cherry-picking of the evidence").

In this case, the ALJ acknowledged that a medical examination conducted by Jennifer M.'s rheumatologist on January 26, 2022, found a long list of issues including tenderness and bony enlargement of joints in her right hand, mild limited range of motion in the left hip, hypermobility of both wrists, crepitus and mild effusion of both knees, back issues, and a negative straight leg raise test. [Dkt. 9-7 at 419.] However, the ALJ then points to a medical appointment two days later on January 28, 2022, where "other than mild joint pain and mild enlargement of the MPC joints, the claimant's joints were unremarkable, she had a stable gait, and her exam findings were otherwise unremarkable." [Dkt. 9-2 at 30.] Jennifer M. correctly notes that the January 28, 2022, appointment was a general follow-up with a community clinic where her chief complaint was worsening depression. [Dkt. 11 at 13; dkt. 9-7 at 505.] Roughly a month later, during the claimant's follow up with her rheumatologist, she complained of "increased joint pain since the last visit" and her exam results were consistent with her January 26, 2022, appointment. [Dkt. 9-7 at 416.] The ALJ then omitted evidence from two medical appointments at American Health Network Orthopedic Surgeons where Jennifer M. presented with "right hand pain specifically in her 1st and 2nd carpometacarpal joints" on March 10, 2022, and June 9, 2022. [Dkt. 9-7 at 483, 486.]

Instead, the ALJ noted "at an examination on June 27, 2022, the claimant's joints were unremarkable, and she had a stable gait." [Dkt. 9-2 at 31.] Yet that "examination" was an emergency clinic visit for a severe reaction to poison ivy where, after three days, Jennifer M. still presented with "scattered maculopapular eruptions" on various parts of her body. [Dkt. 9-7 at 510.] The ALJ provides no explanation for why Jennifer M. would have recited a long list of unrelated ailments at an emergency visit to treat poison ivy. Furthermore, the denial of musculoskeletal symptoms cited by the ALJ at the emergency visit was part of the standard "Review of Systems," not a separate examination. [Dkt. 9-7 at 510.] As this District has previously observed, "largely normal examinations and denial of pain in the review of systems portion of a physician's note sometimes require a deeper dive into the record to determine whether a claimant has chronic pain. Specifically, some courts have noted the unreliability of symptom analysis using the 'Review of Systems' ('ROS') portion of a medical record." *Grace L.M.E. v. Colvin*, 2024 U.S. Dis. LEXIS 237479 at *15-16 (S.D. Ind. 2024); *see also Groeteka,* 2018 U.S. Dist. LEXIS 30524 at *3; *Cooper*, 2018 U.S. Dist. LEXIS 36853 at *22.

Similarly, the ALJ relied on the lack of musculoskeletal symptom reporting at multiple other appointments as alleged evidence of inconsistency in Jennifer M.'s medical claims. While the ALJ acknowledged that imaging of Jennifer M.'s spine on August 25, 2022, "showed curvature and degenerative changes," the ALJ stressed that at a separate appointment that same day, Jennifer M's joints were "unremarkable" and gait was "stable"—even though that appointment was a clinic visit for a UTI. [Dkt. 9-2 at 31; dkt. 9-7 at 602.] Likewise, the ALJ noted that Jennifer M. "denied having joint pain, joint swelling, limited range of motion, muscle aches or weakness, or stiffness" at an appointment on September 29, 2022, [dkt. 9-2 at 31], but failed to note that the denial was only a part of her "Review of Systems" at a clinic appointment for her UTIs. [Dkt. 9-7 at 598.]

9

The very next day, Jennifer M. had an appointment with her orthopedic specialist who noted that Jennifer M.'s "left CMC joint is starting to bother her like her right one does." [Dkt. 9-7 at 540.] The ALJ again stressed that Jennifer M. "denied having any back or joint pain" at an October 13, 2022, appointment when that visit was a clinic follow up concerning Jennifer M.'s persistent UTIs. [Dkt. 9-2 at 31; dkt. 9-7 at 594.] Later the ALJ emphasized that Jennifer M. "denied experiencing any back pain, joint pain, joint swelling, or limited range of motion" at an appointment on July 13, 2023, [dkt. 9-2 at 31], citing to a clinic visit scheduled to address claimant's worsening recurrent UTIs at which claimant had to be catharized and then taught how to self-catharize. [Dkt. 9-7 at 552.] However, the ALJ omitted the fact that Jennifer M. had an appointment with American Health Network Orthopedic Surgeons that same day at which her medical provider noted that Jennifer M. "complains of swelling in her right hand. She has pain in the CMC joint which is radiating towards her wrist. She receives injections every 3 months and they wear off probably for 3 weeks. She wants to know what surgery consists of." [Dkt. 9-7 at 552.]

Having provided an inaccurate accounting of Jennifer M.'s medical record, the ALJ justifies her analysis in one line: "This evidence supports physical functional limitations, but not to the extent alleged." [Dkt. 9-2 at 31.] Jennifer M. argues that this incomplete analysis shows that the ALJ impermissibly chose to evaluate "sound bites" of the medical record while ignoring "evidence that undermined her conclusion." [Dkt. 11 at 15 (citing *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014).] Based on the detailed summary provided above, the undersigned agrees and recommends that the District Judge reverse the Commissioner's decision denying Jennifer M. disability benefits and remand this matter for further proceedings.

**B. Other issues**

Because the undersigned recommends remand on the grounds set forth above, she will not address Jennifer M.'s other arguments in depth. Jennifer M. may raise her other concerns on remand if she deems it appropriate to do so.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge **RECOMMENDS** that the District Judge **REVERSE** the Commissioner's decision denying Jennifer M. disability benefits and **REMAND** this matter for further proceedings. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

SO RECOMMENDED.

Date: 7/24/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email